UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATWAHN McELROY<br><br>        Plaintiff,<br><br>    v.<br><br>INSTITUTIONAL HEAD GROUND, et al.,<br><br>        Defendants. | 1:13-CV-0483-MJS<br><br>ORDER DISMISSING PLAINTIFF'S COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 5)<br><br>AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |

On April 1, 2013, Latwahn McElroy ("Plaintiff"), an individual proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)

Plaintiff's Complaint is now before the Court for screening.  (Compl., ECF No. 5.)  No other parties have appeared in this action.

I.  **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader

1  is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required,

2  but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

3  statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic

4  Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter,

5  accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting

6  Twombly, 550 U.S. at 555).  Facial plausibility demands more than the mere possibility that a

7  defendant committed misconduct and, while factual allegations are accepted as true, legal

8  conclusions are not. Iqbal, 556 U.S. at 678.

9  **II.  PLAINTIFF'S CLAIMS**

10  Plaintiff is currently housed at Salinas Valley State Prison ("SVSP") in Soledad, California.

11  He was previously housed at Kern Valley State Prison ("KVSP") in Delano, California.  Plaintiff

12  names the following individuals as defendants: 1) Official Grounds, institutional head at SVSP,

13  2) A. Hedgepath, warden at KVSP, 3) D. Asuncion, Facility B Captain at SVSP, 4) RN

14  Mecevido, registered nurse at KVSP, 5) J. Harden, housing sergeant at KVSP, 6) Staily,

15  correctional officer at KVSP, 7) W. Bonner, warden at High Desert State Prison, 8) M. Cate,

16  director of the California Department of Corrections and Rehabilitation, and 9) California

17  Department of Corrections and Rehabilitation ("CDCR").  Plaintiff claims these defendants

18  violated his rights under the First, Eighth, and Fourteenth Amendments of the United States

19  Constitution and were involved in a conspiracy to deprive Plaintiff of items needed as a

20  practicing Muslim, thereby violating his rights under the Religious Freedom Restoration Act of

21  1993.

22  Plaintiff's allegations are as follows:

23  Defendants Cate, Hedgepath, Staily, Harden, and Mecevido discriminated against Plaintiff

24  and other Muslim inmates.  (Compl. at 4.)  Defendants CDCR, Staily, and Harden failed to

25  ensure Plaintiff received meals that complied with Islamic dietary requirements.   (Id.)

26  Defendant CDCR's efforts to deny Plaintiff his cultural medicine, religious clothing, and other

27  items have prevented Plaintiff from fully complying with his religious requirements.  (Id.)

28  On September 25, 2007, during the Islamic festival of Ramadan, Defendant Staily provided

1  Plaintiff with a dinner tray but failed to specify if this tray was Plaintiff's Ramadan compliant

2  tray or if Plaintiff would be allowed to keep the tray past sundown to comply with Ramadan

3  requirements. (Compl. at 7.) Plaintiff had a sign outside of his cell indicating he was observing

4  Ramadan. (Id.) Plaintiff did not hear Defendant Staily ask for the tray to be returned because

5  Defendant Staily had failed to specify if Plaintiff could keep the tray past sundown. (Id.) By

6  doing this, Defendants intended to provoke a religious disturbance, discriminate against

7  Plaintiff, and increase religious tensions. (Id. at 7-8.) Defendants forcefully made Plaintiff

8  return the tray. (Id. at 8.) Defendant Harden told Plaintiff he no would longer receive the

9  benefits of being a registered Muslim inmate, and he would not be provided with food. (Id.)

10  Many of Plaintiff's possessions were removed from his cell. (Id. at 8-10.) Plaintiff was placed

11  in a cage in a painful position. (Id. at 9.)

12     Plaintiff asks for injunctive relief, monetary relief, the ability to address his needs

13  through clergy members, the right to engage in community service, a requirement that the

14  CDCR be required to create improved procedures to deal with Muslim inmates, and immediate

15  protection for his possessions. (Compl. at 15.)

16  **III. ANALYSIS**

17     **A. 42 U.S.C. § 1983 Claims**

18     42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights,

19  privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v.

20  Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). § 1983 is not itself

21  a source of substantive rights, but merely provides a method for vindicating federal rights

22  conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

23     To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a

24  right secured by the Constitution or laws of the United States was violated, and (2) that the

25  alleged violation was committed by a person acting under the color of state law. See West v.

26  Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir.

27  1987).

28

1    **B.  Federal Rule of Civil Procedure 18**

2         Fed. R. Civ. P. 18(a) states that "[a] party asserting a claim to relief as an original claim,

3    counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate

4    claims, as many claims, legal, equitable, or maritime, as the party has against an opposing

5    party."  "Thus multiple claims against a single party are fine, but Claim A against Defendant 1

6    should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against

7    different defendants belong in different suits, not only to prevent the sort of morass [a multiple

8    claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required

9    filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or

10   appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. §

11   1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

12        Plaintiff's Complaint focuses on an incident at KVSP, but Plaintiff also names

13   defendants at SVSP and High Desert State Prison.  Defendants Grounds, Asuncion, and

14   Bonner were located at prisons other than KVSP and have not been linked to Plaintiff's claims.

15   Moreover, Plaintiff does not explain what violations occurred at SVSP or High Desert or how

16   they relate to the primary underlying incident at KVSP.

17        Plaintiff will be given leave to amend to address deficiencies in this pleading.  If he

18   chooses to amend but is unable to properly link the defendants at SVSP and High Desert State

19   Prison to the incident at KVSP, he should pursue the claims against unrelated defendants in

20   separate actions.  Plaintiff must file a separate complaint for each unrelated claim.  If he does

21   not, all unrelated claims will be subject to dismissal.

22   **C.  State Agencies**

23        The Eleventh Amendment prohibits suits against state agencies.  See Natural Res. Def.

24   Council v. California Dep't of Transp., 96 F.3d 420, 421 (9th Cir. 1996); Brooks v. Sulphur

25   Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir. 1991); Taylor v. List, 880 F.2d

26   1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was a state agency

27   entitled to Eleventh Amendment immunity); Mitchell v. Los Angeles Community College Dist.,

28   861 F.2d 198, 201 (9th Cir. 1989).  Because CDCR is a state agency, it is entitled to Eleventh

1  Amendment immunity from suit and Plaintiff cannot recover from it.  In the event Plaintiff files

2  an amended complaint, this defendant should not be included.  This defendant should be

3  dismissed from this action.

4      **D.  Linkage Requirement**

5      Pursuant to 42 U.S.C. § 1983, Plaintiff must demonstrate that each named defendant

6  personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934

7  (9th Cir. 2002).   The Supreme Court has emphasized that the term "supervisory liability,"

8  loosely and commonly used by both courts and litigants alike, is a misnomer.  Iqbal, 556 U.S.

9  at 677.  "Government officials may not be held liable for the unconstitutional conduct of their

10  subordinates under a theory of respondeat superior."  Id. at 676.  Rather, each government

11  official, regardless of his or her title, is only liable for his or her own misconduct, and therefore,

12  Plaintiff must demonstrate that each defendant, through his or her own individual actions,

13  violated Plaintiff's constitutional rights.  Id. at 676-677.

14      Plaintiff has not alleged facts demonstrating that Defendants Grounds, Hedgepath,

15  Asuncion, Bonner, or Cate were aware of or directly involved in the incident at issue in

16  Plaintiff's Complaint.  He does not allege these defendants were aware of specific difficulties

17  Plaintiff encountered in attempting to practice his Muslim faith at KVSP.  Plaintiff makes no

18  specific factual allegations against these defendants in his Complaint.  Plaintiff will be given the

19  opportunity to file an amended complaint curing the deficiencies in this respect if and to the

20  extent he can show that they were personally involved in the allegedly wrongful conduct.

21      **E.  First Amendment Claim**

22      Plaintiff alleges that defendants violated his First Amendment rights by failing to provide

23  him with a reasonable opportunity to observe Ramadan and a hospitable environment as a

24  practicing Muslim.  Plaintiff fails to properly link any named defendants to this claim.

25      Under the Constitution, "reasonable opportunities must be afforded to all prisoners to

26  exercise the religious freedom guaranteed by the First and Fourteenth Amendments."  Cruz v.

27  Beto, 405 U.S. 319, 322 n. 2 (1972).  However, as with other First Amendment rights in the

28  inmate context, prisoners' rights may be limited or retracted if required to "maintain [ ]

5

1  institutional security and preserv[e] internal order and discipline."  Bell v. Wolfish, 441 U.S.

2  520, 549 (1979).  Restrictions on access to "religious opportunities"-whether group services,

3  chapel visits, or meetings with religious advisers-must be found reasonable in light of four

4  factors: (1) whether there is a "valid, rational connection" between the regulation and a

5  legitimate government interest put forward to justify it; (2) "whether there are alternative means

6  of exercising the right that remain open to prison inmates"; (3) whether accommodation of the

7  asserted constitutional right would have a significant impact on guards and other inmates; and

8  (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation).

9  Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006);

10  Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc).

11  Certainly, prisons are allowed to place a variety of restrictions on activities, including

12  even religious worship, for security purposes and other legitimate penological reasons.  See

13  Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008).  However, denial of all

14  access to religious worship opportunities can violate the First Amendment.  Id.

15  Despite, and perhaps even because of, the length of Plaintiff's allegations, they do not

16  provide sufficient facts to state a cognizable claim under the First Amendment.  Plaintiff does

17  not allege that he actually lost access to a religious opportunity or that any individual defendant

18  did something that gave rise to his claim.  His allegations do little more than to allege simple

19  miscommunication over when his food tray needed to be returned and suggest a general

20  antipathy to Muslims.  He does allude to unspecified anti-Muslim regulations, but identifies no

21  regulation or event that prevented him from accessing religious opportunities.  Plaintiff does

22  not meet any of the Turner requirements.  He does not address such issues as:  whether there

23  was a connection between a challenged regulation and a legitimate government interest;

24  whether there were alternative means available to allow him to engage in his necessary

25  religious activity notwithstanding the regulations; whether the accommodation he seeks would

26  have an impact on guards or other inmates; and whether alternative means of practicing his

27  religious obligations were available to him.

28  Plaintiff will be given leave to amend this claim, but before doing so, he should consider

6

1 whether he can actually allege sufficient facts to meet the Turner standard.  He may be better

2 off focusing his energies on other claims.

### F.  Eighth Amendment Claim

4 On balance, notwithstanding Plaintiff's belief that he was treated inappropriately

5 because of his religion, his Complaint seems more focused on an Eighth Amendment

6 excessive force claim.

7 Plaintiff alleges that he was subject to excessive force under the Eighth Amendment

8 when Defendants Harden, Staily, and Mecevido forced Plaintiff to return his food tray.

9 The Cruel and Unusual Punishments Clause of the Eighth Amendment protects

10 prisoners from the use of excessive physical force.  Wilkins v. Gaddy, 559 U.S. 34, 36 (2010)

11 (per curiam); Hudson v. McMillian, 503 U.S. 1, 8–9 (1992).  To state an Eighth Amendment

12 claim, a plaintiff must allege that the use of force was "unnecessary and wanton infliction of

13 pain."  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001).  The malicious and sadistic use of

14 force to cause harm always violates contemporary standards of decency, regardless of

15 whether or not significant injury is evident.  Hudson, 503 U.S. at 9; see also Oliver v. Keller,

16 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de

17 minimis uses of force, not de minimis injuries).  However, not "every malevolent touch by a

18 prison guard gives rise to a federal cause of action."  Hudson, 503 U.S. at 9.  "The Eighth

19 Amendment's prohibition of cruel and unusual punishments necessarily excludes from

20 constitutional recognition de minimis uses of physical force, provided that the use of force is

21 not of a sort repugnant to the conscience of mankind."  Id. at 9-10 (internal quotations marks

22 and citations omitted).

23 Whether force used by prison officials was excessive is determined by inquiring if the

24 "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

25 sadistically to cause harm."  Hudson, 503 U.S. at 6-7.  The Court must look at the need for

26 application of force; the relationship between that need and the amount of force applied; the

27 extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as

28 reasonably perceived by prison officials; and any efforts made to temper the severity of the

1   response.  See Whitley, 475 U.S. at 321.  The absence of significant injury alone is not

2   dispositive of a claim of excessive force.  See Wilkens, 559 U.S. at 37.  "Neither accident nor

3   negligence constitutes cruel and unusual punishment, as '[i]t is obduracy and wantonness, not

4   inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and

5   Unusual Punishments Clause.'"  Williams v. Ramirez, 2009 WL 1327515, *3 (E.D.Cal. May 12,

6   2009) (quoting Whitley, 475 U.S. at 319).

7          Plaintiff fails to state an Eighth Amendment claim for excessive force.  He alleges

8   Defendant Staily used excessive force when Plaintiff was made to return his food tray during

9   Ramadan.  He also alleges that Defendant Harden injured him by forcing him against a wall

10  and that Defendant Mecevido verbally insulted him.

11         None of Plaintiff's claims against these defendants rise to the level of an Eighth

12  Amendment excessive force claim.  Plaintiff's allegations are confusing and the Court cannot

13  determine exactly what each defendant did to Plaintiff.  Plaintiff will be given leave to amend

14  this claim.  In his amended complaint, Plaintiff should focus on informing the Court as briefly,

15  directly, and clearly as possible who he contends used excessive force against him.  He

16  should also explain how they did so, the reasons they gave for acting as they did, describe

17  generally what gave rise to the event, and what was said by the participants during the event.

18         **G. Fourteenth Amendment Claim**

19         Plaintiff seems to allege that unspecified defendants violated his rights under the

20  Fourteenth Amendment, but does not link any defendant to such a claim or explain if he seeks

21  to bring an equal protection or a due process claim.  Plaintiff has failed to state a Fourteenth

22  Amendment claim at this stage of the proceedings.  He will be given leave to amend this claim.

23  The Court will provide below a summary of the pleading standards for such claims.  Plaintiff

24  should review the standards and clearly state if he wishes to allege an equal protection and/or

25  due process claim.  He should also link specific defendants to this claim.

26            1.  Equal Protection Claim

27         The Equal Protection Clause of the Fourteenth Amendment requires that persons who

28  are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473

1   U.S. 432, 439 (1985).  An equal protection claim may be established in two ways.  The first

2   method requires a plaintiff to show that the defendant has intentionally discriminated against

3   the plaintiff on the basis of the plaintiff's membership in a protected class.  See, e.g., Lee v.

4   City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).  Under this theory of equal protection,

5   the plaintiff must show that the defendant's actions were a result of the plaintiff's membership

6   in a suspect class, such as race, religion, or alienage.  Thornton v. City of St. Helens, 425 F.3d

7   1158, 1167 (9th Cir. 2005).

8          If the action in question does not involve a suspect classification, a plaintiff may

9   establish an equal protection claim by showing that similarly situated individuals were

10   intentionally treated differently without a rational relationship to a legitimate state purpose.

11   Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v.

12   Rodriguez, 411 U.S. 1 (1972); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679

13   (9th Cir. 2002).  To state an equal protection claim under this theory, a plaintiff must allege

14   that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally

15   treated differently from others similarly situated; and (3) there is no rational basis for the

16   difference in treatment.  Village of Willowbrook, 528 U.S. at 564.

17              2.  Property Interest

18          The Due Process Clause protects prisoners from being deprived of property without due

19   process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners have a protected

20   interest in their personal property.  Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).

21          An authorized, intentional deprivation of property is actionable under the Due Process

22   Clause.  Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush

23   Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985).  Authorized

24   deprivations of property are permissible if carried out pursuant to a regulation that is

25   reasonably related to a legitimate penological interest.  Turner v. Safley, 482 U.S. 78, 89

26   (1987).

27          For an unauthorized deprivation of property, Plaintiff would have to allege that he lacks

28   a meaningful state tort remedy for any unauthorized property deprivation (i.e., a deprivation not

1   authorized by properly adopted regulations, procedures and policies).  Plaintiff should note that

2   for unauthorized deprivations of property, he does have an adequate post-deprivation remedy

3   under California law and therefore, any attempt to pursue a claim under federal law for

4   unauthorized taking of his  property fails as a matter of law.  Barnett v. Centoni, 31 F.3d 813,

5   816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810– 895).

6   **H.  Religious Freedom and Restoration Act**

7   Plaintiff also alleges that his rights were violated under the Religious Freedom

8   Restoration Act of 1993 ("RFRA"), but RFRA was ruled unconstitutional in 1997 as applied to

9   states.  City of Boerne v. Flores, 521 U.S. 507, 536 (1997); Navajo Nation v. United States.

10  Forest Service, 535 F.3d 1058, 1067 n. 10 (9th Cir. 2008).   The Religious Land Use and

11  Institutionalized Persons Act of 2000 ("RLUIPA") has since replaced RFRA, and the Court will

12  analyze Plaintiff's claim under that standard.  See San Jose Christian College v. Morgan Hill,

13  360 F.3d 1024, 1033–34 (9th Cir.2004) ("RLUIPA 'replaces the void provisions of RFRA' . . .

14  and prohibits the government from imposing 'substantial burdens' on 'religious exercise' unless

15  there exists a compelling governmental interest and the burden is the least restrictive means of

16  satisfying the governmental interest.").  RLUIPA provides the following:

17  No government shall impose a substantial burden on the religious exercise of a
18  person residing in or confined to an institution ..., even if the burden results from
    a rule of general applicability, unless the government demonstrates that
19  imposition of the burden on that person-

20  (1) is in furtherance of a compelling government interest; and (2) is the least
    restrictive means of furthering that compelling government interest.

21
22  See Pub.L.No. 106-274, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000cc-1).  Plaintiff

23  bears the initial burden of demonstrating that Defendants substantially burdened the exercise

24  of his religious beliefs.  Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  A

25  "substantial burden" is one that is "oppressive to a significantly great extent."  Id. at 995

26  (internal quotations omitted).  It "must impose a significantly great restriction or onus upon

27  [religious] exercise."  Id. (quotations omitted).  A substantial burden includes situations "'where

28  the state ... denies [an important benefit] because of conduct mandated by religious belief,

10

1   thereby putting substantial pressure on an adherent to modify his behavior and to violate his

2   belief." Id.

3        If a plaintiff meets this burden, the defendants must demonstrate that "any substantial

4   burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling

5   governmental interest and the least restrictive means of furthering that compelling

6   governmental interest." Id. (emphasis in original).  "RLUIPA is to be construed broadly in favor

7   of protecting an inmate's right to exercise his religious beliefs." Id.

8        Plaintiff fails to point to any prison restrictions which placed a substantial burden on the

9   exercise of his religious beliefs.  He raises only a one-time incident that possibly interfered with

10  his observing Ramadan requirements, but he does not say how it did so or link any defendant

11  to the claim.  Plaintiff has failed to state a RLUIPA claim.  He will be given leave to amend.

12  **I.   Conspiracy**

13       Plaintiff also appears to seek relief based upon allegations that defendants conspired to

14  prevent him from exercising his First Amendment right to practice his religion.

15       Conspiracy under § 1983 merely provides a mechanism by which to plead or prove a

16  constitutional or statutory violation.  Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir.

17  1980).  Although conspiracy claims are actionable under Section 1983, "it is necessary that

18  there have been, besides the agreement, an actual deprivation of a right secured by the

19  Constitution and laws."  Landrigan 628 F.2d at 742.  A pro se complaint containing only

20  conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional

21  rights will not withstand a motion to dismiss.  Zemsky v. City of New York, 821 F.2d 148, 152

22  (2nd Cir. 1987).

23       Plaintiff has not pled sufficient facts to support a cognizable claim for a conspiracy to

24  violate Plaintiff's constitutional rights.  Plaintiff's bare allegation that defendants conspired to

25  prevent him from practicing his religion is devoid of any suggestion of facts which might

26  conceivably support it.  Plaintiff will be given leave to amend this claim.

27  **IV.   CONCLUSION AND ORDER**

28       Plaintiff's Complaint fails to state a claim upon which relief may be granted under § 1983.

1  The Court will provide Plaintiff with an opportunity to amend to cure the deficiencies in his

2  claim. Lopez v. Smith, 203 F.3d at 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446,

3  1448-49 (9th Cir. 1987).   Plaintiff may not change the nature of this suit by adding new,

4  unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir.

5  2007) (no "buckshot" complaints).

6      Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what

7  each named defendant did that led to the deprivation of Plaintiff=s constitutional rights, Iqbal,

8  556 U.S. 676-677.  Although accepted as true, the "[f]actual allegations must be [sufficient] to

9  raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations

10  omitted).

11      Finally, an amended complaint supersedes the prior complaint, Forsyth v. Humana, Inc.,

12  114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and it

13  must be "complete in itself without reference to the prior or superseded pleading," Local Rule

14  220.

15      Accordingly, it is HEREBY ORDERED that:

16      1.      The Clerk's Office shall send Plaintiff a complaint form;

17      2.      Plaintiff's Complaint, filed April 1, 2013, is dismissed for failure to state a claim

18  upon which relief may be granted under § 1983;

19      3.      Within thirty (30) days from the date of service of this order, Plaintiff shall file an

20  amended complaint; and

21      4.      If Plaintiff fails to file an amended complaint in compliance with this order, this

22  action will be dismissed, with prejudice, for failure to state a claim.

23

24

IT IS SO ORDERED.

25

26    Dated:   June 30, 2013          /s/ *Michael J. Seng*

27                                  UNITED STATES MAGISTRATE JUDGE

28

12